IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
CEDAR RAPIDS DIVISION

DAVID ELSBURY,

    Plaintiff,

vs.

CAROLYN W. COLVIN,
Commissioner of Social Security,

    Defendant.

No. C14-0020

RULING ON JUDICIAL REVIEW

## TABLE OF CONTENTS

I.    *INTRODUCTION* ............................................ 2

II.   *PRINCIPLES OF REVIEW* ................................. 2

III.  *FACTS* ..................................................... 4
    A.   *Elsbury's Education and Employment Background* ........... 4
    B.   *Administrative Hearing Testimony* ...................... 4
        1.   *Elsbury's Testimony* ............................ 4
        2.   *Vocational Expert's Testimony* ................... 4
    C.   *Elsbury's Medical History* ........................... 5

IV.  *CONCLUSIONS OF LAW* .................................. 12
    A.   *ALJ's Disability Determination* ...................... 12
    B.   *Objections Raised By Claimant* ....................... 15
        1.   *Credibility Determination* ...................... 15
        2.   *Treating Source Opinions* ...................... 21
    C.   *Reversal or Remand* ................................ 26

V.   *CONCLUSION* ........................................... 27

VI.  *ORDER* ................................................. 28

## I. INTRODUCTION

This matter comes before the Court on the Complaint (docket number 1) filed by Plaintiff David Elsbury on February 17, 2014, requesting judicial review of the Social Security Commissioner's decision to deny him Title II disability insurance benefits.[1] Elsbury asks the Court to reverse the decision of the Social Security Commissioner ("Commissioner") and order the Commissioner to provide him disability insurance benefits. In the alternative, Elsbury requests the Court to remand this matter for further proceedings.

## II. PRINCIPLES OF REVIEW

Title 42, United States Code, Section 405(g) provides that the Commissioner's final determination following an administrative hearing not to award disability insurance benefits is subject to judicial review. 42 U.S.C. § 405(g). 42 U.S.C. § 405(g) provides the Court with the power to: "[E]nter . . . a judgment affirming, modifying, or reversing the decision of the Commissioner . . . with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). "The findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive . . ." *Id.*

The Court will "affirm the Commissioner's decision if supported by substantial evidence on the record as a whole." *Anderson v. Astrue*, 696 F.3d 790, 793 (8th Cir. 2012) (citation omitted). Substantial evidence is defined as "'less than a preponderance but . . . enough that a reasonable mind would find it adequate to support the conclusion.'" *Id.* (quoting *Jones v. Astrue*, 619 F.3d 963, 968 (8th Cir. 2010)); *see also Brock v. Astrue*, 674 F.3d 1062, 1063 (8th Cir. 2010) ("Substantial evidence is evidence that a reasonable person might accept as adequate to support a decision but is less than a preponderance.").

---

[1] On March 24, 2014, both parties consented to proceed before a magistrate judge in this matter pursuant to the provisions set forth in 28 U.S.C. § 636(c).

In determining whether the ALJ's decision meets this standard, the Court considers "all of the evidence that was before the ALJ, but it [does] not re-weigh the evidence." *Vester v. Barnhart*, 416 F.3d 886, 889 (8th Cir. 2005) (citation omitted). The Court not only considers the evidence which supports the ALJ's decision, but also the evidence that detracts from his or her decision. *Perks v. Astrue*, 687 F.3d 1086, 1091 (8th Cir. 2012); *see also Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007) (Review of an ALJ's decision "extends beyond examining the record to find substantial evidence in support of the ALJ's decision; [the court must also] consider evidence in the record that fairly detracts from that decision."). In *Culbertson v. Shalala*, 30 F.3d 934, 939 (8th Cir. 1994), the Eighth Circuit Court of Appeals explained this standard as follows:

> This standard is 'something less than the weight of the evidence and it allows for the possibility of drawing two inconsistent conclusions, thus it embodies a zone of choice within which the [Commissioner] may decide to grant or deny benefits without being subject to reversal on appeal.'

*Id.* (quoting *Turley v. Sullivan*, 939 F.2d 524, 528 (8th Cir. 1991), in turn quoting *Bland v. Bowen*, 861 F.2d 533, 535 (8th Cir. 1988)). In *Buckner v. Astrue*, 646 F.3d 549 (8th Cir. 2011), the Eighth Circuit further explained that a court "'will not disturb the denial of benefits so long as the ALJ's decision falls within the available 'zone of choice.'" *Id.* at 556 (quoting *Bradley v. Astrue*, 528 F.3d 1113, 1115 (8th Cir. 2008)). "'An ALJ's decision is not outside that zone of choice simply because [a court] might have reached a different conclusion had [the court] been the initial finder of fact.'" *Id.* Therefore, "even if inconsistent conclusions may be drawn from the evidence, the agency's decision will be upheld if it is supported by substantial evidence on the record as a whole." *Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005) (citing *Chamberlain v. Shalala*, 47 F.3d 1489, 1493 (8th Cir. 1995)); *see also Wildman v. Astrue*, 596 F.3d 959, 964 (8th Cir. 2010) ("If substantial evidence supports the ALJ's decision, we will not reverse the decision merely because substantial evidence would have also supported a contrary

outcome, or because we would have decided differently."); *Moore v. Astrue*, 572 F.3d 520, 522 (8th Cir. 2009) ("'If there is substantial evidence to support the Commissioner's conclusion, we may not reverse even though there may also be substantial evidence to support the opposite conclusion.' *Clay v. Barnhart*, 417 F.3d 922, 928 (8th Cir. 2005).").

## III. FACTS

### A. Elsbury's Education and Employment Background

Elsbury was born in 1968. He is a high school graduate. He also studied two years in college, but did not earn a degree. In the past, he worked as a forester for the City of Cedar Rapids, Iowa.

### B. Administrative Hearing Testimony

#### 1. Elsbury's Testimony

At the administrative hearing, the ALJ asked Elsbury what he considered his biggest obstacle to performing full-time work to be. Elsbury replied that his biggest obstacle to working is his difficulty with concentration and remembering things. Physically, he replied that standing on his feet more than 15 to 20 minutes was difficult due to back pain. Elsbury testified that there is very little he is able to do. He generally spends his time in his house, reading or putting dishes in the dishwasher. He also stated that he needs to regularly change positions from sitting to standing to walking for short amounts of time. He stated that it bothers him emotionally that his life activities are limited and he can't do more.

#### 2. Vocational Expert's Testimony

At the hearing, the ALJ provided vocational expert Marian Jacobs with a hypothetical for an individual that is limited to:

> performing sedentary work . . . [and] can stoop, crouch,
> kneel, and crawl only occasionally, that is no more than 1/3 of
> the work day. The worker should not climb ladders, ropes, or
> scaffolds, or is not able to do that on the job. And then, in

> addition to those limits, I want you to assume the worker's
> limited to doing only simple routine and repetitive work.

(Administrative Record at 70-71.) The vocational expert testified that under such limitations, Elsbury could not perform his past relevant work. The vocational expert testified, however, that Elsbury could perform the following jobs: (1) addresser and sorter of envelopes and packages, and (2) final assembler of optical frames. Next, the ALJ included an additional restriction for the original hypothetical individual:

> I want you to assume that the worker requires the freedom to
> alternate between sitting and standing while performing their
> job tasks. Let's assume that the worker needs to do that as
> often as every 30 minutes during the work day. But I want
> you to assume that the worker is able to make this transition or
> this transfer between the two positions or postures in a
> relatively seamless and rapid way, so that they wouldn't lose
> any productivity or their productivity would not be reduced
> because they're able to make the switch so quickly, it really
> would be, it would have no effect on their output.

(Administrative Record at 71-72.) The vocational expert testified that with the additional limitation, Elsbury could not perform the two jobs initially suggested under the original hypothetical, but could perform the following alternate jobs: (1) surveillance system monitor, and (2) charge account clerk.

## C. Elsbury's Medical History

In January 2010, Elsbury met with Dr. Jeffrey A. Westpheling, M.D., complaining of back pain. Dr. Westpheling noted that he had treated Elsbury in the past for back pain. In 2007 and 2008, epidural steroid injections had helped alleviate some of Elsbury's previous back pain. Upon examination, Dr. Westpheling diagnosed Elsbury with a recurrent thoracic strain. Dr. Westpheling recommended an epidural steroid injection as treatment. Dr. Mark D. Kline, M.D., a pain specialist, administered the epidural steroid injection. Elsbury's back pain continued and in March 2010, Dr. Westpheling limited Elsbury to: (1) lifting/carrying 10 pounds or less, (2) no bending or stooping, (3) no

squatting or kneeling, (4) no climbing, and (5) working a maximum of four hours in an eight-hour workday. Similarly, in April 2010, Dr. Kline determined that Elsbury continued to have the same limitations as those provided by Dr. Westpheling in March 2010.[2]

On September 15, 2010, Elsbury was referred by his employer, the City of Cedar Rapids, to Dr. Bryan Netolicky, M.D., for a psychiatric evaluation. Dr. Netolicky noted that Elsbury was working part-time for the city due to a back injury and subsequent mood problems. Elsbury initially hurt his back in 2005 while pulling up a large branch as part of his job duties in the city's Forestry Department Over the years, his back pain worsened, and in the past year, he received multiple injections with no relief to his back pain. With regard to Elsbury's mental health, Dr. Netolicky noted that:

> As a result of the pain, he said that he has had mixed emotions. Prior to five years ago, he said he had never experienced any prolonged bouts of depression or any problems with anxiety. Since then and particularly in the last year, he said he has felt more depressed and has an "I don't care attitude." His sleep in sporadic and interrupted by his pain. He cannot get comfortable, tosses and turns often. Energy is poor. Appetite is "awful" and he said he has lost 45 to 50 lbs in the last several months. His interest is still present, but he is very discouraged that he cannot do things like he used to. . . . Concentration is poor and he said he cannot remember things like he used to and cannot spell like he used to.

(Administrative Record at 453.) Upon examination, Dr. Netolicky diagnosed Elsbury with major depressive disorder, complicated by chronic pain. Dr. Netolicky recommended medication and psychotherapy as treatment.

---

[2] *See* Administrative Record at 356.

On September 22, 2010, Elsbury was referred by Dr. Netolicky to Dr. Paul J. Sundell, Ph.D., for psychotherapy. In reviewing Elsbury's medical history, Dr. Sundell noted that:

> [Elsbury] reportedly has been suffering with chronic back pain since an injury and subsequent surgery in 2005. His work time has decreased since and he now works four hours a day five days a week. . . . Currently he is not allowed to bend or twist. He can only have 15 lbs or less of equipment or debris to hold or remove without bending. [He] stated that he is depressed about his medical condition and consequent limitations. . . . He admitted that he struggles to manage his anger effectively and express his anger appropriately at this time.

(Administrative Record at 451.) During the interview, Dr. Sundell found that Elsbury "presented with a depressed mood and flat affect. It seemed that his insight and judgment were limited. It appeared that his attention was adequate. However, his memory seemed to be variable."[3] Upon examination, Dr. Sundell diagnosed Elsbury with major depressive disorder. Dr. Sundell recommended psychotherapy as treatment.

On November 24, 2010, at the request of Elsbury's attorney, Dr. Stanley Mathew, M.D., Elsbury's treating pain management physician, filled out a functional capacity questionnaire for Elsbury. Dr. Mathew determined that Elsbury had a permanent restriction of working only 4 hours per day due to his physical limitations. Dr. Mathew indicated that Elsbury could sit for 2 hours, stand for 1 hour, and walk for 1 hour in a four-hour workday. Dr. Mathew further indicated that Elsbury would need to be able to alternate between sitting, standing, and walking at will to alleviate his pain and symptoms. Dr. Mathew opined that Elsbury should not bend, stoop, squat, crawl, climb, kneel, or twist, and only occasionally crouch and balance. Finally, Dr. Mathew also limited Elsbury to lifting and carrying no more than 24 pounds occasionally.

---

[3] Administrative Record at 452.

On March 9, 2011, Dr. C. David Smith, M.D., reviewed Elsbury's medical records and provided Disability Determination Services ("DDS") with a physical residual functional capacity ("RFC") assessment for Elsbury. Dr. Smith determined that Elsbury could: (1) occasionally lift and/or carry 20 pounds, (2) frequently lift and/or carry 10 pounds, (3) stand and/or walk with normal breaks for a total of about six hours in an eight-hour workday, (4) sit with normal breaks for a total of about six hours in an eight-hour workday, and (5) push and/or pull without limitations. Dr. Smith also determined that Elsbury could occasionally climb, balance, stoop, kneel, crouch, and crawl. Dr. Smith found no manipulative, visual, communicative, or environmental limitations. Dr. Smith concluded that:

> The [medical evidence of record] is sufficient to assess the allegations of [Elsbury]. [His] allegations of pain are credible. Attributing his pain to degenerative disk disease is not credible as his pain pattern is not consistent with that disease.

(Administrative Record at 475.)

On March 15, 2011, Dr. Jennifer Ryan, Ph.D., reviewed Elsbury's medical records and provided DDS with a Psychiatric Review Technique and mental RFC assessment for Elsbury. On the Psychiatric Review Technique assessment, Dr. Ryan diagnosed Elsbury with major depressive disorder. Dr. Ryan determined that Elsbury had the following limitations: mild restriction of activities of daily living, moderate difficulties in maintaining social functioning, and moderate difficulties in maintaining concentration, persistence, or pace. On the mental RFC assessment, Dr. Ryan determined that Elsbury was moderately limited in his ability to: carry out detailed instructions, maintain attention and concentration for extended periods, get along with co-workers or peers without distracting them or exhibiting behavioral extremes, and respond appropriately to changes in the work setting. Dr. Ryan concluded that:

M[edical evidence of record] documents overall moderate symptom severity with limited improvement in [Elsbury's] condition. Documented symptom severity is consistent with reported function information. [Elsbury's] statements are considered generally credible. The preponderance of the evidence continued in the file supports the assertion that [Elsbury] is able to carry out simple to mildly complex instructions and perform work tasks consistent with this ability.

(Administrative Record at 490.)

On April 21, 2011, Dr. Mathew provided Elsbury's employer with a disaiblity rating, and permanent restrictions for Elsbury. Dr. Mathew summarized Elsbury's medical history as follows:

[Elsbury] . . . has been seen in my office since 09/16/2010 for chronic low back pain[.] . . . The patient explains that back in 2005 while doing heavy lifting at work . . . he developed severe back pain, neck pain, mid back pain, as well as headaches. Since that time he has tried physical therapy and multiple medications with minimal improvement of his symptoms. He also complained of numbness and tingling in his arms and legs, did have an electrodiagnostic study that was negative. He also had a cervical spine CT, which showed degenerative disc disease at C5-C6 with endplate osteophyte spurs, left frontal stenosis. The patient had a cervical myelogram, which showed the same. . . . MRI of the cervical spine shows posterior paracentral disc protrusion at C5-C6, very small right paracentral disc protrusion at C6-C7. The patient had multiple injections with minimal relief of his symptoms. He eventually has been treated under my care for chronic pain management. His pain has been moderately controlled with muscle relaxants and opioids.

(Administrative Record at 542.) Dr. Mathew diagnosed Elsbury with chronic neck, mid-back, and low back myofascial pain, degenerative joint disease, and history of depression. Dr. Mathew determined that Elsbury "has reached maximum medical improvement and

no further improvement may be seen."[4] Dr. Mathew opined that Elsbury is permanently restricted from lifting more than 20 pounds, and no repetitive bending, lifting, or squatting. Dr. Mathew concluded that Elsbury has an 8% impairment of his whole person.

On September 9, 2011, Elsbury met with Dr. Mark W. Mittauer, M.D., for an independent medical examination. Dr. Mittauer noted that Elsbury rated his back pain at 7 or 8 on a scale of 1 to 10, with 10 being the most severe pain. Elsbury also stated that he has difficulties with depression, insomnia, fatigue, low self-esteem, low motivation, and diminished concentration. Upon examination, Dr. Mittauer diagnosed Elsbury with major depressive disorder and chronic pain. Dr. Mittauer opined that Elsbury's depression is primarily due to his back injury and resulting chronic pain. Dr. Mittauer concluded that Elsbury was "currently unable to work."[5] Specifically, Dr. Mittauer opined that:

> [Elsbury's] depression, pain, and associated fatigue and diminished concentration interfere with his ability to perform physical labor as well as work related mental tasks. His crying episodes would likely cause embarrassment in the workplace. He notes that when he sits still and is not otherwise involved in a task, that he has a tendency to fall asleep. This would also interfere with his ability to work.

(Administrative Record at 529.) Dr. Mittauer indicated that Elsbury's prognosis for improvement was "fair at best and likely poor."[6] Dr. Mittauer suggested that "some" additional medications "might" improve his depression, sleep, and pain. Dr. Mittauer also suggested that "if Mr. Elsbury receives more effective treatment for his obstructive sleep

---

[4] Administrative Record at 543.

[5] *Id.* at 529.

[6] Administrative Record at 529.

apnea, his improved sleep might diminish his daytime fatigue and thereby improve his pain and depression."[7]

On January 10, 2012, at the request of Elsbury's attorney, Dr. Netolicky filled out a questionnaire regarding Elsbury's mental health status. Dr. Netolicky diagnosed Elsbury with major depressive disorder. Dr. Netolicky opined that Elsbury's chronic pain and permanent physical limitations are a contributing factor to his depression. Dr. Netolicky further opined that Elsbury's depression "can be identified as chronic/ongoing at this point. It is possible for symptoms to ultimately remit but that potential for subsequent depressive symptoms/episodes is permanent."[8] As for Elsbury's ability to work, Dr. Netolicky concluded that he "is not capable of returning to his current job. I don't believe he is capable of gainful employment."[9]

On May 22, 2012, Dr. Netolicky provided Elsbury's attorney with a "Medical Source Statement of Ability to do Work-Related Activities" for Elsbury. Dr. Netolicky determined that Elsbury would be unable to perform the following work activities on a daily basis in a typical workplace setting: understanding and remembering detailed instructions, carrying out detailed instructions, interacting appropriately with supervisors, interacting appropriately with co-workers, responding appropriately to work pressures in a usual work setting, responding appropriately to changes in a routine work setting, being punctual and maintaining regular attendance, and completing tasks in a timely manner without being distracted by co-workers or personal/business stressors. Dr. Netolicky also determined that Elsbury could perform the following work activities on a daily basis up to 1/3 of the workday: understanding and remembering short, simple instructions,

---

[7] *Id.*

[8] *Id.* at 536.

[9] *Id.*

carrying out short, simple instructions, making judgments on simple work-related decisions, and interacting appropriately with the public. Dr. Netolicky opined that Elsbury's "ability to function in any . . . line of work is severely limited if not impossible given his mental health in the recent past coupled [with] his reported ongoing pain issues."[10]

On August 6, 2012, Dr. Mathew provided Elsbury's attorney with a letter evaluating Elsbury's current physical health. Dr. Mathew indicated that Elsbury "was eventually stabilized from a pain standpoint with medications, though he developed severe depression and anxiety and was taken out of work by Dr. Netolicky, his psychiatrist."[11] Dr. Mathew diagnosed Elsbury with chronic neck, mid-back, and low back pain, myofascial pain, degenerative joint disease of the spine, and history of depression. Dr. Mathew opined that Elsbury's "complaints of pain do limit his strength as well as his range of motion."[12] Dr. Mathew concluded that "due to mental health and moderate to severe pain, I do feel [Elsbury's] symptoms are real and limit his ability to work."[13]

## IV. CONCLUSIONS OF LAW

### A. ALJ's Disability Determination

The ALJ determined that Elsbury is not disabled. In making this determination, the ALJ was required to complete the five-step sequential test provided in the social security regulations. *See* 20 C.F.R. § 404.1520(a)-(g); *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987); *McCoy v. Astrue*, 648 F.3d 605, 611 (8th Cir. 2011); *Page v. Astrue*, 484 F.3d 1040, 1042 (8th Cir. 2007). The five steps an ALJ must consider are:

---

[10] Administrative Record at 691.

[11] *Id.* at 692.

[12] Administrative Record at 693.

[13] *Id.*

> (1) whether the claimant is gainfully employed, (2) whether the claimant has a severe impairment, (3) whether the impairment meets the criteria of any Social Security Income listings, (4) whether the impairment prevents the claimant from performing past relevant work, and (5) whether the impairment necessarily prevents the claimant from doing any other work.

*Goff v. Barnhart*, 421 F.3d 785, 790 (8th Cir. 2005) (citing *Eichelberger*, 390 F.3d at 590); *Perks*, 687 F.3d at 1091-92 (discussing the five-step sequential evaluation process); *Medhaug v. Astrue*, 578 F.3d 805, 813-14 (8th Cir. 2009) (same); *see also* 20 C.F.R. § 404.1520(a)-(g). "If a claimant fails to meet the criteria at any step in the evaluation of disability, the process ends and the claimant is determined to be not disabled." *Pelkey v. Barnhart*, 433 F.3d 575, 577 (8th Cir. 2006) (citing *Goff*, 421 F.3d at 790, in turn quoting *Eichelberger*, 390 F.3d at 590-91).

In considering the steps in the five-step process, the ALJ:

> first determines if the claimant engaged in substantial gainful activity. If so, the claimant is not disabled. Second, the ALJ determines whether the claimant has a severe medical impairment that has lasted, or is expected to last, at least 12 months. Third, the ALJ considers the severity of the impairment, specifically whether it meets or equals one of the listed impairments. If the ALJ finds a severe impairment that meets the duration requirement, and meets or equals a listed impairment, then the claimant is disabled. However, the fourth step asks whether the claimant has the residual functional capacity to do past relevant work. If so, the claimant is not disabled. Fifth, the ALJ determines whether the claimant can perform other jobs in the economy. If so, the claimant is not disabled.

*Kluesner v. Astrue*, 607 F.3d 533, 537 (8th Cir. 2010). At the fourth step, the claimant "bears the burden of demonstrating an inability to return to [his] or her past relevant work." *Pate-Fires v. Astrue*, 564 F.3d 935, 942 (8th Cir. 2009) (citing *Steed v. Astrue*, 524 F.3d 872, 875 n.3 (8th Cir. 2008)). If the claimant meets this burden, the burden

shifts to the Commissioner at step five to demonstrate that "given [the claimant's] RFC [(residual functional capacity)], age, education, and work experience, there [are] a significant number of other jobs in the national economy that [the claimant] could perform." *Brock*, 674 F.3d at 1064 (citing *Ellis v. Barnhart*, 392 F.3d 988, 993 (8th Cir. 2005)). The RFC is the most an individual can do despite the combined effect of all of his or her credible limitations. 20 C.F.R. § 404.1545. The ALJ bears the responsibility for determining "'a claimant's RFC based on all the relevant evidence including the medical records, observations of treating physicians and others, and an individual's own description of his [or her] limitations.'" *Boettcher v. Astrue*, 652 F.3d 860, 867 (8th Cir. 2011) (quoting *Moore*, 572 F.3d at 523); 20 C.F.R. § 404.1545.

The ALJ applied the first step of the analysis and determined that Elsbury had not engaged in substantial gainful activity since January 22, 2010. At the second step, the ALJ concluded from the medical evidence that Elsbury has the following severe impairments: residuals of a back injury, myofascial pain syndrome, and mood disorder. At the third step, the ALJ found that Elsbury did not have an impairment or combination of impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. At the fourth step, the ALJ determined Elsbury's RFC as follows:

> [Elsbury] has the residual functional capacity to perform "sedentary work" . . . except the worker can stoop, crouch, kneel and crawl only occasionally. The worker should not climb ladders, ropes or scaffolds. The individual is limited to only simple, routine and repetitive work. The worker requires the freedom to alternate between standing and sitting while performing his job tasks as often as every 30 minutes during the workday. The worker is able to make this transition between the two positions in a relatively seamless and rapid way so that he would not lose any productivity.

(Administrative Record at 22.) Also at the fourth step, the ALJ determined that Elsbury was unable to perform any of his past relevant work. At the fifth step, the ALJ determined

that based on his age, education, previous work experience, and RFC, Elsbury could work at jobs that exist in significant numbers in the national economy. Therefore, the ALJ concluded that Elsbury was not disabled.

## B. Objections Raised By Claimant

Elsbury argues that the ALJ erred in two respects. First, Elsbury argues that the ALJ failed to properly evaluate his subjective allegations of pain and disability. Second, Elsbury argues that the ALJ failed to properly evaluate and fully consider the opinions of his treating sources.

### 1. Credibility Determination

Elsbury argues that the ALJ failed to properly evaluate his subjective allegations of pain and disability. Elsbury maintains that the ALJ's credibility determination is not supported by substantial evidence. The Commissioner argues that the ALJ properly considered Elsbury's testimony, and properly evaluated the credibility of his subjective complaints.

When assessing a claimant's credibility, "[t]he [ALJ] must give full consideration to all the evidence presented relating to subjective complaints, including the claimant's prior work record, and observations by third parties and treating and examining physicians relating to such matters as: (1) the claimant's daily activities; (2) the duration, frequency, and intensity of the pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness and side effects of medication; [and] (5) functional restrictions." *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984). An ALJ should also consider a "a claimant's work history and the absence of objective medical evidence to support the claimant's complaints[.]" *Finch v. Astrue*, 547 F.3d 933, 935 (8th Cir. 2008) (citing *Wheeler v. Apfel*, 224 F.3d 891, 895 (8th Cir. 2000)). The ALJ, however, may not disregard a claimant's subjective complaints "'solely because the objective medical

evidence does not fully support them.'" *Renstrom v. Astrue*, 680 F.3d 1057, 1066 (8th Cir. 2012) (quoting *Wiese v. Astrue*, 552 F.3d 728, 733 (8th Cir. 2009)).

Instead, an ALJ may discount a claimant's subjective complaints "if there are inconsistencies in the record as a whole." *Wildman*, 596 F.3d at 968; *see also Finch*, 547 F.3d at 935 (same); *Lowe v. Apfel*, 226 F.3d 969, 972 (8th Cir. 2000) ("The ALJ may not discount a claimant's complaints solely because they are not fully supported by the objective medical evidence, but the complaints may be discounted based on inconsistencies in the record as a whole."). If an ALJ discounts a claimant's subjective complaints, he or she is required to "'make an express credibility determination, detailing the reasons for discounting the testimony, setting forth the inconsistencies, and discussing the Polaski factors.'" *Renstrom*, 680 F.3d at 1066 (quoting *Dipple v. Astrue*, 601 F.3d 833, 837 (8th Cir. 2010)); *see also Ford*, 518 F.3d at 982 (An ALJ is "required to 'detail the reasons for discrediting the testimony and set forth the inconsistencies found.' *Lewis v. Barnhart*, 353 F.3d 642, 647 (8th Cir. 2003)."). Where an ALJ seriously considers, but for good reason explicitly discredits a claimant's subjective complaints, the Court will not disturb the ALJ's credibility determination. *Johnson v. Apfel*, 240 F.3d 1145, 1148 (8th Cir. 2001) (citing *Pena v. Chater*, 76 F.3d 906, 908 (8th Cir. 1996)); *see also Schultz v. Astrue*, 479 F.3d 979, 983 (8th Cir. 2007) (providing that deference is given to an ALJ when the ALJ explicitly discredits a claimant's testimony and gives good reason for doing so); *Gregg v. Barnhart*, 354 F.3d 710, 714 (8th Cir. 2003) ("If an ALJ explicitly discredits the claimant's testimony and gives good reasons for doing so, we will normally defer to the ALJ's credibility determination."). "'The credibility of a claimant's subjective testimony is primarily for the ALJ to decide, not the courts.'" *Vossen v. Astrue*, 612 F.3d 1011, 1017 (8th Cir. 2010) (quoting *Pearsall v. Massanari*, 274 F.3d 1211, 1218 (8th Cir. 2001)).

In his decision, the ALJ determined that:

> [Elsbury] was not a reliable source of information regarding his functional limits. Although he said he has severe memory problems and cannot even help his son with homework, there is no evidence that he has persistently reported such a degree of poor memory to any doctor throughout the time in question. In mid May 2010 [Elsbury] claimed to a nurse practitioner that he was getting more forgetful. However, the nurse practitioner made no finding of poor memory. The nurse practitioner recited a wealth of detailed information from [Elsbury's] memory. The nurse practitioner subsequently observed [Elsbury's] recent and remote memory were intact. In fact, notes from his treating psychiatrist and psychologist typically show his memory is grossly intact and never mention that he reported any deficit in memory.
>
> [Elsbury] alleged at the hearing that he does very little. However, the record establishes [he] has been rather active. A treatment note from March 2012 indicated he was "fixing up his house to sell." [Elsbury] alleged he did no camping, fishing, hunting, and hiking. However, [Elsbury] was observed hunting and admitted fishing and camping elsewhere in the record.
>
> Those inconsistencies cause some doubt about [Elsbury's] testimony and the opinions regarding his exertional limits.

(Administrative Record at 23-24.) The ALJ also noted that an MRI in July 2010 did not "correspond" to his symptoms, casting doubt on the accuracy of Elsbury's allegations of functional limitations.[14] The ALJ further pointed out that on another visit to a doctor, Elsbury's:

> allegation of pain at a level 9 to 10/10, while at the same time being observed to be pleasant and in no acute distress tends to detract from the weight the undersigned gives to [his] statements regarding his condition.

---

[14] *See* Administrative Record at 25.

(Administrative Record at 25.)  Lastly, the ALJ determined that:

> [Elsbury's] work history is a factor in his favor concerning the
> credibility of his allegations.  However, factors in his favor are
> outweighed by other evidence and inconsistencies in the record
> as a whole which establish that he retains the capability for
> work sufficient to perform the jobs indicated by the vocational
> expert at he hearing which exist in significant numbers in the
> national economy.
>
> Based on the above discussion and inconsistencies in the
> record as a whole, [Elsbury's] allegations concerning the
> existence, persistence and intensity of symptoms and functional
> limitations are not given full weight or credibility, but only
> such as reflected in the residual functional capacity assigned by
> the undersigned.

(Administrative Record at 31.)

It is clear that the ALJ considered the regulations, *Polaski* factors, and medical records in making his credibility determination.[15]  What is less clear, and somewhat troubling to the Court, is whether the ALJ *accurately* considered the entire record and all the *Polaski* factors in addressing Elsbury's subjective allegations of pain and disability. For example, contrary to the ALJ's assertion that Elsbury failed to mention alleged difficulties with memory to his treating doctors, Elsbury did in fact report difficulties with memory and concentration to treating sources.  In September 2010, Elsbury reported to Dr. Netolicky, his treating psychiatrist, that his concentration was poor and he had difficulties remembering things.[16]  Similarly, his treating psychologist, Dr. Sundell, upon examination, found Elsbury's memory to be "variable."[17]  In September 2011,

---

[15] *Id.* at 23-25; 31.

[16] Administrative Record at 453.

[17] *Id.* at 452.

Dr. Mittauer, a consultative examining doctor, found Elsbury to have "diminished concentration."[18]

Furthermore, the ALJ's determination that Elsbury was "rather active" because he was "fixing up his house to sell" is taken from a treatment note with no context. In the current history section of the treatment note, it simply states "[f]ixing up his house to sell."[19] It does not state that Elsbury himself was fixing up his house to sell. It does not state Elsbury was helping another person or group of persons to fix up his house to sell. In short, the quotation from the treatment note does not state what Elsbury was doing, if anything, to fix up his house to sell. Thus, the Court finds this reason to be speculative at best for questioning Elsbury's credibility. Similarly, in a Social Security questionnaire, Elsbury did not claim that he was completely unable to camp, fish, or hunt; instead, he stated that his "pain and injury limits the family things we do like camping, fishing, hunting and walking outdoors."[20] In another questionnaire, in referencing camping, hunting, and fishing, Elsbury stated that "it is really hard to do the things that I enjoy" due to sitting, standing, and walking limitations.[21] It is clear that Elsbury did not claim the total inability to camp, fish, or hunt; but instead, stated that he was significantly limited in doing these activities. Even if on occasion, he did such activities, such actions do not necessarily demonstrate that he has "the ability to perform the requisite physical acts day in and day out, in the sometimes competitive and stressful conditions in which real people work in the real world." *McCoy v. Schweiker*, 683 F.2d 1138, 1147 (8th Cir. 1982). Similarly, Elsbury's ability "to engage in some life activities, however, does not support

---

[18] *Id*. at 529.

[19] *Id*. at 579.

[20] Administrative Record at 196.

[21] *Id*. at 204.

a finding that [he] retains the ability to work." *Forehand v. Barnhart*, 364 F.3d 984, 988 (8th Cir. 2004).

Lastly, the Court is unpersuaded by the ALJ's reliance on a *single* July 2010 doctor visit where Elsbury claimed his pain was 9 out of 10, even though he did not appear to be in acute pain as a reason for discounting his credibility. Throughout the ALJ's own review of Elsbury's medical history, the ALJ notes that at various doctor visits Elsbury claimed his pain was 7 out of 10 (twice), 5 out of 10 (twice), 4 out of 10, 3 out of 10, 4 to 5 out of 10, and 3 to 4 out of 10.[22] Cherry-picking one instance where Elsbury claimed his pain was 9 out of 10 is an insufficient reason for discounting his allegations of pain and disability.

In summary, the Court finds that the ALJ failed to set forth the requisite detailed reasons for discrediting Elsbury's testimony, and fully explain the inconsistencies in the record. *See Ford*, 518 F.3d at 982 (providing that an ALJ must "'detail the reasons for discrediting the testimony and set forth the inconsistencies found.'") (quotation omitted); *Baker*, 159 F.3d at 1144 ("When rejecting a claimant's complaints of pain, the ALJ must make an express credibility determination, must detail reasons for discrediting the testimony, must set forth inconsistencies, and must discuss the *Polaski* factors."). Therefore, the Court finds that remand is appropriate for the ALJ to further develop the record with regard to Elsbury's credibility. On remand, the ALJ shall set forth in detail his reasons for finding Elsbury's subjective allegations to be credible or not credible. If on remand, the ALJ finds Elsbury's testimony not to be credible, the ALJ is required to fully and *accurately* explain in detail, the reasons for his credibility determination and fully and *accurately* explain the inconsistencies between Elsbury's subjective allegations and the evidence in the record.

---

[22] *Id*. at 25-27.

## 2. *Treating Source Opinions*

Elsbury argues that the ALJ failed to properly evaluate the opinions of his treating sources, including the opinions of Drs. Westpheling, Kline, Mathew, and Netolicky. Specifically, Elsbury argues that the ALJ's reasons for discounting the opinions of his treating sources are not supported by substantial evidence in the record. Elsbury concludes that this matter should be remanded for further consideration of the opinions of his treating sources.

The ALJ is required to "assess the record as a whole to determine whether treating physicians' opinions are inconsistent with substantial evidence of the record." *Travis v. Astrue*, 477 F.3d 1037, 1041 (8th Cir. 2007) (citing 20 C.F.R. § 404.1527(d)(2)). "Although a treating physician's opinion is entitled to great weight, it does not automatically control or obviate the need to evaluate the record as a whole." *Hogan v. Apfel*, 239 F.3d 958, 961 (8th Cir. 2001) (citing *Prosch v Apfel*, 201 F.3d 1010, 1013 (8th Cir. 2000)). "The ALJ may discount or disregard such an opinion if other medical assessments are supported by superior medical evidence, or if the treating physician has offered inconsistent opinions." *Id.*; *see also Travis*, 477 F.3d at 1041 ("A physician's statement that is 'not supported by diagnoses based on objective evidence' will not support a finding of disability. *Edwards v. Barnhart*, 314 F.3d 964, 967 (8th Cir. 2003). If the doctor's opinion is inconsistent with or contrary to the medical evidence as a whole, the ALJ can accord it less weight.'*Id.*.); *Strongson v. Barnhart,* 361 F.3d 1066, 1070 (8th Cir. 2004) (an ALJ does not need to give controlling weight to a physician's RFC if it is inconsistent with other substantial evidence in the record); *Cabrnoch v. Bowen*, 881 F.2d 561, 564 (8th Cir. 1989) (the resolution of conflicts of opinion among various treating and examining physicians is the proper function of an ALJ). The ALJ may discount or disregard a treating physician's opinion if other medical assessments are supported by

21

superior medical evidence, or if the treating physician has offered inconsistent opinions. *Hamilton v. Astrue*, 518 F.3d 607, 609 (8th Cir. 2008).

Also, the regulations require an ALJ to give "good reasons" for assigning weight to statements provided by a treating physician. *See* 20 C.F.R. § 404.1527(d)(2). An ALJ is required to evaluate every medical opinion he or she receives from a claimant. 20 C.F.R. § 404.1527(d). If the medical opinion from a treating source is not given controlling weight, then the ALJ considers the following factors for determining the weight to be given to all medical opinions: "(1) examining relationship, (2) treating relationship, (3) supportability, (4) consistency, (5) specialization, and (6) other factors." *Wiese*, 552 F.3d at 731 (citing 20 C.F.R. §§ 404.1527(c)). "'It is the ALJ's function to resolve conflicts among the opinions of various treating and examining physicians. The ALJ may reject the conclusions of any medical expert, whether hired by the claimant or the government, if they are inconsistent with the record as a whole.'" *Wagner*, 499 F.3d at 848 (quoting *Pearsall v. Massanari*, 274 F.3d 1211, 1219 (8th Cir. 2001)). The decision must contain specific reasons for the weight given to the treating source's medical opinion, supported by evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight. SSR *96-2P*, 1996 WL 374188 (1996).

In considering the opinions of Dr. Westpheling, the ALJ granted his opinions "some" weight, generally accepting his physical limitations for Elsbury. However, the ALJ gave no weight to Dr. Westpheling's opinion that Elsbury should be limited to working no more than four hours in a typical workday. Specifically, the ALJ found such a limitation "is not supported by any of the doctor's clinical notes or observations."[23] Dr. Kline provided similar limitations as Dr. Westpheling for Elsbury, including limiting him to working only 4 hours in a typical workday. Like Dr. Westpheling, the ALJ gave

---

[23] Administrative Record at 24.

Dr. Kline's opinions "some weight . . . for reasons similar to those given to the similar opinion of Dr. Westpheling."[24]

In evaluating Dr. Mathew's opinions, the ALJ discounted his findings regarding Elsbury's funcational capacities[25] for three reasons: (1) Dr. Mathew's opinions were inconsistent with his own treatment notes; (2) Dr. Mathew's opinions relied on "complete acceptance of [Elsbury's] allegations concerning the existence, persistence and intensity of symptoms and functional limitations"; and (3) Dr. Mathew's opinions regarding Elsbury's functional abilities are inconsistent due to a lack of atrophy in Elsbury's muscles.[26] In addition to his opinion regarding Elsbury's RFC, including limiting Elsbury to working no more than four hours in an eight-hour workday, Dr. Mathew also provided an opinion for a worker's compensation claim filed by Elsbury, stating that Elsbury is permanently restricted from: (1) repetitive bending, lifting, or squatting, and (2) lifting or carrying over 20 pounds.[27] The ALJ gave this opinion "great weight."

Lastly, Dr. Netolicky is Elsbury's long-time treating psychiatrist. At various places in the record, Dr. Netolicky opined that Elsbury was incapable of full-time employment due to his mental and physical impairments, primarily depression combined with chronic

---

[24] *Id.* at 25.

[25] *Id.* at 466-468 (providing an RFC for Elsbury limiting him to working only 4 hours per day and being able to sit for 2 hours in a 4-hour day, stand for 1 hour in a 4-hour day, and walk for 1 hour in a 4-hour day).

[26] *Id.* at 27.

[27] *See* Administrative Record at 542-544 (opinion from Dr. Mathew on Elsbury's permanent restrictions for a worker's compensation claim).

pain.[28] In his decision, the ALJ discounted Dr. Netolicky's opinion because it was "not consistent with other evidence and inconsistencies in the record as a whole."[29]

In reviewing the ALJ's decision, the Court bears in mind that an ALJ has a duty to develop the record fully and fairly. *Cox*, 495 F.3d at 618. Because an administrative hearing is a non-adversarial proceeding, the ALJ must develop the record fully and fairly in order that "'deserving claimants who apply for benefits receive justice.'" *Wilcutts*, 143 F.3d at 1138 (quotation omitted). Furthermore, if an ALJ rejects the opinions of a treating physician, the regulations require that the ALJ give "good reasons" for rejecting those opinions. *See* 20 C.F.R. § 404.1527(d)(2). The Court finds that the ALJ has not fully met these requirements.

Here, the ALJ apparently agreed with the opinions of Dr. Westpheling and Dr. Kline regarding Elsbury's functional limitations, except for their respective opinions that Elsbury is limited to working only four hours in an eight-hour workday. In discounting the four-hour work limitation provided by both Dr. Westpheling and Dr. Kline, the ALJ offers nothing more than a conclusory statement that such a limitation is not supported by their respective treatment notes. The ALJ points to no evidence in the record to support his reasoning. Moreover, four additional treating and examining sources, Dr. Mathew (treating physician), Dr. Netolicky (treating psychiatrist), Nancy Howe (treating nurse practitioner), and Dr. Mittauer (examining doctor) agree with Dr. Westpheling and Dr. Kline, concluding that Elsbury should be limited to four hours or less of work in a typical workday. Under such circumstances, the Court finds that the ALJ failed to give good reasons for discounting the opinions of Dr. Westpheling and Dr. Kline.

---

[28] *Id.* at 536; 691.

[29] *Id.* at 30.

Similar to Dr. Westpheling and Dr. Kline, the ALJ also apparently agreed with Dr. Mathew's opinions, giving "great weight" to certain findings related to Elsbury's functional limitations, except for Dr. Mathew's limitation of Elsbury to working only four hours in an eight-hour workday.[30] Again, the Court finds the ALJ's conclusory statement that Dr. Mathew's treatment notes are inconsistent with a four-hour work limitation to be an inadequate reason for discounting Dr. Mathew's opinions. In his decision, the ALJ offers no evidence from the record to support his reasoning, and fails to explain any inconsistency. Such failure is significant because Dr. Mathew's four-hour work limitation is consistent with five other treating and examining source opinions (Dr. Westpheling, Dr. Kline, Dr. Netolicky, Nancy Howe, and Dr. Mittauer). Next, the Court is unpersuaded that Dr. Mathew's reliance on "complete acceptance of [Elsbury's] allegations concerning the existence, persistence and intensity of symptoms and functional limitations" is a "good" reason for rejecting Dr. Mathew's opinions. "A patient's report of complaints, or history, is an essential diagnostic tool" for any doctor when he or she is offering a medical opinion or diagnosis. *Flanery v. Chater*, 112 F.3d 346, 350 (8th Cir. 1997); *see also Brand v. Secretary of Dept. of Health, Ed. and Welfare*, 623 F.2d 523, 526 (8th Cir. 1980) ("Any medical diagnosis must necessarily rely upon the patient's history and subjective complaints."). Lastly, the ALJ's conclusion that Dr. Mathew's opinions regarding Elsbury's functional abilities are inconsistent due to a lack of atrophy in Elsbury's muscles appears to be nothing more than the ALJ's own personal opinion.

---

[30] *Compare* Administrative Record at 466-468 (November 2010 opinion providing an RFC for Elsbury limiting him to working only 4 hours per day and being able to sit for 2 hours in a 4-hour day, stand for 1 hour in a 4-hour day, and walk for 1 hour in a 4-hour day); Administrative Record at 542-544 (April 2011 opinion providing permanent restrictions for Elsbury with no discussion of his ability to work full or part-time for worker's compensation purposes); and Administrative Record at 692-693 (August 2012 opinion providing that due to physical and mental impairments Elsbury is limited in his ability to perform full-time work).

Nothing in the record supports or even suggests that a lack of atrophy in Elsbury's muscles constitutes a misdiagnosis of chronic pain or inconsistency with Dr. Mathew or any other treating source opinions on Elsbury's functional limitations.

Finally, the ALJ, again, offers only one conclusory reason for discounting the opinion of Dr. Netolicky, Elsbury's treating psychiatrist. Specifically, the ALJ discounted Dr. Netolicky's opinion because it was "not consistent with other evidence and inconsistencies in the record as a whole."[31] The ALJ, however, points to no evidence in the record to support his reasoning. Accordingly, the Court finds the ALJ failed to give good reasons for discounting the opinions of Dr. Netolicky.

In summary, the Court finds the ALJ did not provide any reasons other than conclusory statements, let alone "good reasons," for discounting the opinions of Elsbury's treating sources, including Drs. Westpheling, Kline, Mathew, and Netolicky. Therefore, the Court finds this matter should be remanded so that the ALJ may fully and fairly develop the record with regard to the opinions of Elsbury's treating sources. On remand, the ALJ shall provide clear reasons for accepting or rejecting the opinions of Dr. Westpheling, Dr. Kline, Dr. Mathew, and Dr. Netolicky. The ALJ must both explain and support his reasons with evidence from the record.

### C. Reversal or Remand

The scope of review of the Commissioner's final decision is set forth in 42 U.S.C. § 405(g) which provides in pertinent part:

> The court shall have the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Secretary, with or without remanding the cause for a rehearing.

42 U.S.C. § 405(g). The Eighth Circuit Court of Appeals has stated that:

---

[31] Administrative Record at 30.

> Where the total record is overwhelmingly in support of a
> finding of disability and the claimant has demonstrated his [or
> her] disability by medical evidence on the record as a whole,
> we find no need to remand.

*Gavin v. Heckler*, 811 F.2d 1195, 1201 (8th Cir. 1987); *see also Beeler v. Brown*,
833 F.2d 124, 127 (8th Cir. 1987) (finding reversal of denial of benefits was proper where
"the total record overwhelmingly supports a finding of disability"); *Stephens v. Sec'y of
Health, Educ., & Welfare*, 603 F.2d 36, 42 (8th Cir. 1979) (explaining that reversal of
denial of benefits is justified where no substantial evidence exists to support a finding that
the claimant is not disabled). In the present case, the Court concludes that the medical
records as a whole do not "overwhelmingly support a finding of disability." *Beeler*,
833 F.2d at 127. Instead, the ALJ simply failed to: (1) properly consider Elsbury's
subjective allegations of pain and disability; and (2) fully and fairly develop the record
with regard to the opinions of Elsbury's treating sources. Accordingly, the Court finds
that remand is appropriate.

## V. CONCLUSION

The Court concludes that this matter should be remanded to the Commissioner for
further proceedings. On remand, the ALJ must accurately consider all of the evidence
relating to Elsbury's subjective allegations of disability, accurately address his reasons for
crediting or discrediting those allegations, and properly apply the *Polaski* factors when
determining Elsbury's credibility. The ALJ shall also provide clear reasons for accepting
or rejecting the opinions of Elsbury's treating sources, including Dr. Westpheling,
Dr. Kline, Dr. Mathew, and Dr. Netolicky. In reconsidering the treating souce opinions,
the ALJ must support his reasons with evidence from the record.

## VI. ORDER

For the foregoing reasons, it is hereby **ORDERED**:

This matter is **REVERSED** and **REMANDED** to the Commissioner of Social Security pursuant to sentence four of 42 U.S.C. § 405(g), for further proceedings as discussed herein.

DATED this ___11___ day of December, 2014.

JON STUART SCOLES
CHIEF MAGISTRATE JUDGE
NORTHERN DISTRICT OF IOWA